ABRAMSON & DENENBERG, P.C.
BY: ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NO: 53603
1315 WALNUT STREET, 12TH FLOOR
PHILADELPHIA, PA 19107
(215) 546-1345

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA MINNICH, as ADMINISTRATRIX of the ESTATE OF DAVID L. MINNICH 11 W. JEFFERSON ST. MEDIA, PA 19063 <br> Plaintiff <br> v. <br> MONTGOMERY COUNTY P.O. BOX 218 NORRISTOWN, PA 19401 <br> and <br> PRIME CARE MEDICAL, INC. 3940 LOCUST LN. HARRISBURG, PA 17109 <br> and <br> CORRECTIONAL MEDICAL CARE 653 SKIPPACK PIKE, SUITE 118 BLUE BELL, PA <br> and <br> MARGARET CARRILLO, MD MEDICAL DIRECTOR FOR PRIME CARE MEDICAL, INC. and/or CORRECTIONAL MEDICAL CARE <br> and <br> KATHLEEN ROONEY MEDICAL STAFF EMPLOYEE PRIME CARE MEDICAL, INC. and/or CORRECTIONAL MEDICAL CARE <br> and <br> TARA ARCHER MEDICAL STAFF EMPLOYEE PRIME CARE MEDICAL, INC. and/or CORRECTIONAL MEDICAL CARE <br> and <br> DANIELLE QUILL, MA | CIVIL ACTION <br><br> JURY TRIAL DEMANDED <br><br> No. 14-7236 |

| | |
|---|---|
| MEDICAL STAFF EMPLOYEE  and/or | : |
| CORRECTIONAL MEDICAL CARE | : |
| and | : |
| SARAH HENDERSON, RN | : |
| MEDICAL STAFF EMPLOYEE | : |
| PRIME CARE MEDICAL, INC.   and/or | : |
| CORRECTIONAL MEDICAL CARE | : |
| and | : |
| MARY RINEHART, RN | : |
| MEDICAL STAFF EMPLOYEE | : |
| PRIME CARE MEDICAL, INC.   and/or | : |
| CORRECTIONAL MEDICAL CARE | : |
| and | : |
| ROSEMARY SIMPSON, LPN | |
| MEDICAL STAFF EMPLOYEE | : |
| PRIME CARE MEDICAL, INC.   and/or | : |
| CORRECTIONAL MEDICAL CARE | : |
| and | : |
| NURSE JOHN/JANE DOE #1-5 | : |
| MEDICAL STAFF EMPLOYEE | : |
| PRIME CARE MEDICAL, INC.   and/or | : |
| CORRECTIONAL MEDICAL CARE | : |
| and | : |
| CORRECTIONAL OFFICERS | : |
| JOHN/JANE DOE | : |
| MEDICAL STAFF EMPLOYEE | : |
| P.O. BOX 218 | : |
| NORRISTOWN, PA 19401 | : |
| Defendants | : |

## AMENDED COMPLAINT

I. INTRODUCTION

1.     Plaintiff brings the action for damages pursuant 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution, as well as the statutory and common laws of the Commonwealth of Pennsylvania as the result of the death of her husband, David Minnich, while incarcerated as a pretrial detainee at Montgomery County Correctional Facility ("MCCF").

## II.   JURISDICTION and VENUE

2.   The court has jurisdiction over the Federal Law Claims pursuant to 28 U.S.C. §1331 and §1343 and jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367 and the principals of pendant and ancillary jurisdiction.

3.   Venue is proper under 28 U.S.C. §1391(b) because the cause of action upon which the complaint is based arose in Eagleville, Pennsylvania, within Montgomery County, which is in the Eastern District of Pennsylvania.

## III.   PARTIES

4.   Plaintiff, Pamela Minnich, is adult citizen of the Commonwealth of Pennsylvania residing as captioned, and was at times material hereto the wife of the decedent, David Minnich.

5.   Plaintiff, Pamela Minnich, is the administrator of the estate of her deceased husband, David Minnich, and the sole heir of that estate.

6.   Defendant, Montgomery County, is an entity organized and existing under the laws of the Commonwealth of Pennsylvania, which maintains a central office and/or principal place of business located as captioned.

7.   At all material times, defendant, Montgomery County was charged with the responsibility of providing adequate medical care to the pretrial detainees/inmates housed at MCCF, including the decedent, David Minnich, and delegated that constitutional duty to Defendants, Prime Care Medical, Inc. ("PMC") and/or Correctional Medical Care ("CMC"), and its/their employees.

8.   Defendant, PMC and/or CMC is/are corporation(s) with its/their primary location as set forth above. At all times material, PMC and/or CMC had a contract with

MCCF to hire, train and supervise medical/psychiatric personnel and to establish related procedures and policies within the Montgomery County prison system, and to provide constitutionally adequate medical care to persons incarcerated at MCCF, including the decedent, David Minnich.

9. At all time material hereto, Defendant, PMC and/or CMC acted under of color of state law, in joint participation with Defendant, Montgomery County to provide medical care to inmates at MCCF, and were fulfilling a traditional governmental function.

10. At all material times, Defendant, PMC and/or CMC was/were a state actor(s).

11. At all material times, Defendant, PMC and/or CMC, acted or failed to act by and through its/their agents, servants, and/or employees, then and there acting within the course and scope of their agency or employment.

12. Defendant, Margaret Carrillo, M.D., was at all material times an adult individual and resident of the Commonwealth of Pennsylvania who was the Medical Director for the Defendant, PMC and/or CMC and was responsible for overseeing and for the hiring, training, supervision and discipline of all medical staff at the George Hill Correctional Facility, including Defendants, Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5.

13. Defendant, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, were responsible for providing the medical care to pretrial detainees/inmates at MCCF, including the decedent, David Minnich.

14. Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5 are adult individuals and resident of the Commonwealth of Pennsylvania, who at all material time were employed as health care providers working at MCCF.

15. Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, were at times material hereto acting under color of state law and are being sued in their individual capacity.

16. Defendants Correctional Officers John/Jane Doe are adult individuals and residents of the Commonwealth of Pennsylvania, who were at all material times were employed by MCCF, and Defendant Montgomery County.

17. Defendants Correctional Officers John/Jane Doe were at times material hereto acting under color of state law and are being sued in their individual capacity.

18. At all material times, all individually named Defendants acted in concert, pursuant to an agreement and/or policy of Montgomery County and/or PMC/CMC to cause harm to the Plaintiff by denying him adequate medical care.

### III.   OPERATIVE FACTS

19. On or about October 16, 2012, David Minnich was arrested on multiple counts of corruption of a minor, and indecent sexual assault of persons under the age of 13 and under the age of 16, along with aggravated indecent assault of a child.

20. David Minnich was given a $500,000 bail, which he could not make, and taken to MCCF, where he was to be housed as a pretrial detainee pending trial.

21. Mr. Minnich, who had never been incarcerated before, was housed in administrative segregation, and immediately began experiencing symptoms of severe anxiety, including shaking and becoming tearful.

22. He came under the care of Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson,

RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, and was scheduled to see a psychiatrist; however, this appointment was deliberately and/or intentionally delayed and postponed by all of the aforementioned Defendants, along with Defendants Correctional Officers John/Jane Doe.

23.     Because his mental/emotional condition worsened, Mr. Minnich became "depressed" and even more "anxious", and informed all of the individually named defendants of his condition.

24.     Notwithstanding the fact that Mr. Minnich had informed all of the aforementioned Defendants of his worsening mental state, nothing was done to address his growing depression and anxiety.

25.     Defendants had first noted on October 23, 2012 that Mr. Minnich was in need of psychiatric treatment, and on December 3, 2012, Mr. Minnich had still not been seen by a psychiatrist.

26.     When finally seen by Kathleen Rooney on December 3, 2012, Defendants intentionally and/or with deliberate indifference, ignored Mr. Minnich's serve depression and obvious signs of suicide, and refused to provide him any psychiatric medication or care and treatment, despite the fact that the need for such medical care and treatment was obvious.

27.     Defendant Kathleen Rooney was not a psychiatrist, but only holds a masters in social work, and was not qualified to determine whether the Plaintiff was suicidal, and under State Law would not have been permitted to prescribe the Plaintiff any needed medications.

28.     In addition to Defendants' knowledge of Mr. Minnich's growing depression, and the deterioration of his mental/emotional condition, Defendants were also aware that Mr. Minnich was a former drug and alcohol abuser, that he had been accused of committing a sexual crime against a minor, that he was facing serious jail time, and that he had never been incarcerated before, all of which were red flags informing

Defendants that Mr. Minnich was particularly vulnerable to suicide and therefore a high suicide risk.

29. After his December 3, 2012 appointment with Kathleen Rooney, Mr. Minnich attended a bail reduction hearing, in which he was informed that his bail would not be reduced, which sent him into an emotional/mental tailspin.

30. The denial of the Plaintiff's bail on December 3, 2012 was another red flag that put the Defendants on notice that the Plaintiff was particularly vulnerable to suicide and therefore a high suicide risk.

31. Defendants knew that Mr. Minnich was already in a fragile mental/emotional state, and that the news about at the bail reduction hearing could be the straw that broke the camels back, but failed to place him on suicide watch, or provide him any psychiatric medication or care and treatment.

32. On December 20, 2012, Mr. Minnich killed himself in his jail cell by hanging himself with a sheet.

33. At the time that Mr. Minnich killed himself, he was under the care and treatment of Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, all of whom knew that he was particularly vulnerable to suicide, and that there was a strong likelihood that he would attempt suicide, yet none of whom took any action to place Mr. Minnich on suicide watch, or provide him adequate psychiatric medication and care and treatment.

34. The fact that Mr. Minnich was particularly vulnerable to suicide constitutes a serious medical need.

35. Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, and Correctional Officers John/Jane Doe, were deliberately indifferent to this serious medical need by delaying and

denying Mr. Minnich access to psychiatric care and treatment, and by providing inadequate psychiatric care and treatment, resulting in his death.

36. If the aforementioned Defendants had not been deliberately indifferent to the decedent's serious psychiatric medical needs, he would not have tried, or been able to commit suicide.

37. The decedent, Mr. Minnich, was confined to a jail cell without adequate surveillance, supervision, or proper medical and/or psychological/psychiatric treatment resulting in the hanging and his death.

38. Upon information and belief, other incarcerated detainees had in the past committed suicide by hanging themselves while under the care and custody of the afornentioned medical providers and prison officials.

39. Upon information and belief, Defendants knew prior to the aforementioned date that certain persons, especially persons who were under severe emotional stress, would exhibit mentally disturbed and/or suicidal behavior that would require immediate and specialized psychiatric and/or medical treatment and supervision.

40. Upon information and belief, Defendants also knew that safe and effective means of preventing detainees from attempting or committing suicide existed, including but not limited to: removal of potential implements used to commit suicide (clothing, sheets, shoe laces), taped visual monitoring, actual observation on a regular basis (every 15 minutes) and/or immediate referral of the person to a medical and/or psychiatric facility instead of leaving the person unhandcuffed in a cell with the implements with which to commit suicide.

41. Upon information and belief, as a result of the defendants' actual knowledge of the decedent's potentially suicidal/depressed emotional state and his need for immediate psychiatric treatment and specialized supervision, the failure of defendant, Montgomery County, to have proper policies, training and supervision related to detention of suicidal persons, despite the obvious need for such policies, as well as the deliberate indifference of Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, and Correctional Officers John/Jane Doe, it was a foreseeable consequence that decedent, left unattended, would attempt to harm himself and impose an immediate threat to his own safety and well being.

42. Upon information and belief, Defendants Montgomery County, Prime Care Medical, Inc. ("PMC") and/or Correctional Medical Care ("CMC") had an unconstitutional custom, practice and/or policy of failing to have adequate suicide screening procedures, and, in an effort to save money, of failing to have a qualified psychiatrist on staff to evaluate potentially suicidal inmates such as the Plaintiff, and who could prescribe any required medication.

43. As a further direct and proximate result of the above deliberate indifference of Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, and Correctional Officers John/Jane Doe, the decedent, David Minnich, suffered enormous emotional pain and suffering, and committed suicide thereby suffering a complete loss of earnings and earnings capacity.

## COUNT I - 42 U.S.C. 1983
## DUE PROCESS CLAUSE--DELIBERATE INDIFFERENCE TO KNOW RISK OF SUICIDE
## PLAINTIFF v. MARGARET CARRILLO, M.D., KATHLEEN ROONEY, TARA ARCHER, DANIELLE QUILL, MA, SARAH HENDERSON, RN, MARY RINEHART, RN, ROSEMARY SIMPSON, LPN AND NURSE JOHN/JANE DOE #'S 1-5, AND CORRECTIONAL OFFICERS JOHN/JANE DOE

44. All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

45. As alleged above, Defendants Margaret Carrillo, M.D., Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, and Correctional Officers John/Jane Doe knew that Mr. Minnich was particularly vulnerable to suicide and that there was a strong likelihood that he would attempt suicide, and notwithstanding this knowledge of a significant risk to Mr. Minnich's health and safety, they were deliberately indifferent by failing to take any action or precaution to prevent Mr. Minnich from killing himself such as placing him on suicide watch or providing him adequate psychiatric care and treatment.

46. The risk of a suicide attempt by Mr. Minnich was obvious.

47. Defendants intentionally and/or with deliberate indifference ignored this risk and allowed Mr. Minnich to kill himself.

48. As the direct and proximate result of the above deliberate indifference of Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, and Correctional Officers John/Jane Doe, Mr. Mitten killed himself.

49. The above described actions of the Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, and Correctional Officers, in their individual capacities, were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against the Defendants, Margaret Carrillo, M.D., along with Defendants Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

**COUNT II - 42 U.S.C. §1983 AND §1988**
**CUSTOM AND POLICY OF UNCONSTITUTIONAL CONDUCT**
**PLAINTIFF v. MONTGOMERY COUNTY, PMC and/or CMC**

50. All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

51. The Plaintiff believes and therefore avers that the Defendants, Montgomery County and/or PMC/CMC have adopted and maintained for many years a recognized and accepted policy, custom, and practice of condoning and/or the acquiescence of the deliberate indifference to serious medical needs of inmates, and subjecting them to the same type of treatment to which Plaintiff was subjected, which policy violates the Eighth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the

Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. § 1983.

52. The aforementioned unconstitutional policy, custom and practice includes failing to provide adequate policies and procedures for identifying persons who are high suicide risks, and failing to have adequate policies and procedures for addressing persons who are suicidal, such as placing them on suicide watch and providing them with adequate psychiatric medical care and treatment, and failing to staff qualified psychiatrist to evaluate suicidal inmates and prescribe need care and treatment, including needed medications.

53. The aforementioned unconstitutional policy, custom and practice is based on Defendants desire to save money by not providing the required medical care and treatment and also a systemic belief that prisoners are manipulative and the psychiatric needs, even where a person is suicidal, does not warrant medical care and treatment.

54. The Plaintiff believes and therefore avers that the Defendants, Montgomery County and/or PMC/CMC have adopted and maintained for many years a recognized and accepted policy, custom, and practice of failing to adequately train prison and medical staff employees regarding the warning signs of potential suicides, and failing to adequately train them regarding the necessary precautions to avoid suicides, and of failing to discipline employees who allow suicides to occur on their watch.

55. The Defendants, Montgomery County and/or PMC/CMC have been deliberately indifferent to the rights of inmates MCCF to be provided with essential medical care, which deliberate indifference violates the Plaintiff's rights under the Eighth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the

Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. § 1983.

56. The Plaintiff believes and therefore avers, that at the time of the aforementioned incident, Defendants, Montgomery County and/or PMC/CMC knew or should have known of the above described policy and that it deliberately, knowingly, and/or negligently failed to take measures to stop or limit the policy, including, inter alia, providing proper training, supervision, and control of the officers, agents, and/or employees of the MCCF and/or PMC/CMC.

57. By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policy, Defendants, Delaware County and/or CEC Defendants, Montgomery County and/or PMC/CMC condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Eighth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and was in violation of 42 U.S.C. § 1983.

58. The Plaintiff believes and therefore avers that the Defendants, Montgomery County and/or PMC/CMC have adopted and maintained for many years a recognized and accepted policy consisting of an inadequate system of review of claims of inadequate medical care, which system has failed to identify instances of deliberate indifference to serious medical needs or insure that prisoners serious medical needs are being met.

WHEREFORE, pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff demands compensatory damages against Defendants, Montgomery County and/or PMC/CMC in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

**COUNT III- PENNSYLVANIA LAW**
**NEGLIGENCE**
**PLAINTIFF v. PMC and/or CMC MARGARET CARRILLO, M.D., KATHLEEN ROONEY, TARA ARCHER, DANIELLE QUILL, MA, SARAH HENDERSON, RN, MARY RINEHART, RN, ROSEMARY SIMPSON, LPN**
**AND NURSE JOHN/JANE DOE #'S 1-5**

59. All preceding paragraphs are fully incorporated herein by reference.

60. At all times relevant hereto, Defendants PMC and/or CMC, Margaret Carrillo, M.D., Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5 had a duty to comply with generally accepted medical standards of care in their treatment of Mr. Minnich. *See* Exhibit "A", Certificate of Merit.

61. Defendants PMC and/or CMC, Margaret Carrillo, M.D., Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5 violated their duty of care to Mr. Minnich. *See* Exhibit "A", Certificate of Merit.

62. The Defendants violation of their duty of care to Mr. Minnich was a direct and proximate cause and a substantial factor in bringing about Mr. Minnich's injuries and death, as set-forth above, and accordingly Defendants are liable to Plaintiff under Pennsylvania law. *See* Exhibit "A", Certificate of Merit.

WHEREFORE, pursuant to Pennsylvania law, Plaintiff demands compensatory damages, jointly and severally, from Defendants PMC and/or CMC, Margaret Carrillo,

M.D., Kathleen Rooney, Tara Archer, Danielle Quill, MA, Sarah Henderson, RN, Mary Rinehart, RN, Rosemary Simpson, LPN and Nurse John/Jane Doe #'s 1-5 in an amount in excess of $175,000 plus costs, attorney's fees and other appropriate relief.

### COUNT IV - WRONGFUL DEATH ACTION
### PURSUANT TO 42 U.S.C. § 1983 AND STATE LAW NEGLIGENCE
### PLAINTIFF v. ALL DEFENDANTS

63.     All preceding paragraphs are fully incorporated herein by reference.

64.     Based on Plaintiff's claims under 42 U.S.C. § 1983 and State Law Negligence, Plaintiff brings this claim for wrongful death.

65.     As a direct and proximate result of the aforementioned actions of the defendants, the decedent, Mr. Minnich, his family and his estate have suffered severe emotional and pecuniary losses and damages including the following:

   (a)     an amount which will cover all funeral, burial and estate administration expenses incurred.

   (b)     an amount which will fairly and adequately compensate the family members of the decedent for their loss of such contributions as they would have received between the time of the death of the decedent and today. This includes all monies that the decedent would have spent for or given to his family.

   (c)     an amount which will fairly and adequately compensate his family for the loss of such contributions as the decedent would have contributed to the support of his family between today and the end of his normal life expectancy.

   (d)     an amount which will fairly and adequately compensate his family for the pecuniary and emotional value of the services, society and comfort that he would

have given to his family had he lived including such elements as provision of physical comfort and services and provision of society and comfort.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Negligence Law, plaintiff, the Estate of David Minnich, demands compensatory and punitive damages against defendants jointly and/or severally, in an amount in excess of One Hundred Seventy Five Thousand ($175,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

### COUNT V-PENNSYLVANIA SURVIVAL ACT
### PURSUANT TO 42 U.S.C. § 1983 AND STATE LAW NEGLIGENCE
### PLAINTIFF v. ALL DEFENDANTS

66. All preceding paragraphs are fully incorporated herein by reference.

67. Based on Plaintiff's claims under 42 U.S.C. § 1983 and State Law Negligence, Plaintiff brings this survival action.

68. As a direct and proximate result of the aforementioned actions of the defendants, the decedent, Mr. Minnich, his family and his estate are entitled to damages which shall include the following:

(1) an award of the total net amount that the decedent would have earned between the date of his death and today.

(2) an award of the net amount that the decedent would have earned between today and the natural end of the decedent's life expectancy.

(3) an award of such an amount as will fairly and adequately compensate the estate for the mental and physical pain and suffering that the decedent

endured from the moment of the improper treatment by the defendants to the moment of his death as a foreseeable result of the improper treatment.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Law, the plaintiff, the Estate of David Minnich, demands compensatory and punitive damages against defendants jointly and/or severally, in an amount in excess of One Hundred Seventy-Five Thousand ($175,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

ABRAMSON & DENENBERG, P.C.


BY:/s/ Alan Denenberg
    ALAN E. DENENBERG, ESQ.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA MINNICH, as ADMINISTRATRIX of the ESTATE OF DAVID L. MINNICH<br>**Plaintiff**<br><br>v.<br><br>MONTGOMERY COUNTY et al.<br>**Defendant** | : CIVIL ACTION<br>: JURY TRIAL DEMANDED<br>:<br>: No. 14-cv-07236<br>:<br>:<br>:<br>:<br>: |

## CERTIFICATE OF SERVICE

I, Alan E. Denenberg, Esquire, attorney for the plaintiff, hereby certify that on March 16, 2015, I served a true and correct copy of Plaintiff's Amended Complaint via the Court's Electronic Filing System on the following attorney's of record:

Angelo L. Scaricamazza, Jr. Esq.
NAULTY, SCARICAMAZZA & McDEVITT, LLC
1617 JFK Blvd.
750 One Penn Center
Philadelphia, PA  19103

John R. Ninosky, Esquire
Johnson, Duffie Stewart & Weidner
301 Market Street, P.O. Box 109
Lemoyne, PA  17043-0109

Phillip W. Newcomer, Esquire
Office of the Solicitor/Chief Litigation
Montgomery County Courthouse
P.O. Box 311
Norristown, PA  19404-0311


Date:  March 16, 2015                     ___s/ Alan Denenberg_____
                                          ALAN DENENBERG, ESQUIRE

ABRAMSON & DENENBERG, P.C.
BY:  ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NO: 53603
1315 WALNUT STREET, 12TH FLOOR
PHILADELPHIA, PA 19107
(215) 546-1345

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA MINNICH, as ADMINISTRATRIX of the ESTATE OF DAVID L. MINNICH | : CIVIL ACTION |
| Plaintiff | : No. 14-07236 |
| v. | : |
| PRIME CARE MEDICAL, INC. | : |
| Defendants | : |

## CERTIFICATE OF MERIT AS TO PRIME CARE MEDICAL, INC. AND CORRECTIONAL MEDICAL CARE

I, Alan E. Denenberg, Esquire, certify that:

1. An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the defendants in the treatment, practice or work that is the subject of this complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm; and/or

2. The claim that the defendants, Prime Care Medical, Inc, and/or Correctional Medical Care and/or its employees deviated from an acceptable professional standard is based solely on allegations that other licensed professional for whom these defendants are responsible deviated from an acceptable professional standard and an



appropriate licensed professional supplied a written statement to the undersigned that the care, skill or knowledge exercised or exhibited by the other licensed professional(s) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Date: 3/16/15

ALAN E. DENENBERG, ESQUIRE